Battle, J.
 

 The clause in the testator’s will, in which he gives to his wife, all his stock of horses, cattle, hogs, &c., immediately follows that in which he devised all “his landed estate,” after the death of his wife, one half to the heirs of his daughter Eliza Ragsdale, and the other half to the heirs of his other daughter, Lavinia Freeman ; and it is connected with it by the expression, “I also give,” &c. When, therefore, he says, in another part of the clause, that he gives “ the stock of horses, cattle, hogs,” &c., “ in like manner as the aforesaid property,” he must mean that, after the death of his wife, it was to be divided between the heirs (or children) of his daughters, in the same manner as he had directed a division of his lands.
 

 As the executor had assented to the legacy to the widow for life, the legal title vested in the children of the two daughters, who were living at the death of the tenant for life, and a division among them may be made, either specifically or by means of a sale, as the parties or their guardians may desire.
 

 According to the principle recognised as law in the case of
 
 Newland
 
 v.
 
 Newland,
 
 1 Jones’ Rep. 463, we think the wife of the testator took only an estate for life, with an absolute power of disposition, in the slaves Andy, Harriet, Thomas and ‘Jacob, and as she died without exercising her power, and as the will has no residuary clause, the testator died intestate as
 
 *477
 
 to the reversionary interest in them, and they now form a part of his estate. In the case to which we have referred, we quote an extract from 4 Rent’s Commentaries, pp. 35 and 386, to the following effect: “ If an estate be given to a person, generally or indefinitely, with a power of disposition, it carries a fee, unless the testator gives to the first taker an estate for life only, and annexes to it a power of disposition of the reversion. In that case, the express limitation for life will control the operation of the power and prevent it from enlarging the estate to a fee.” We then add, “ these rules are laid down after an elaborate review of the English and American authorities, in some of which it was said, that there was, in this respect, no distinction between real and personal estate, and we have no doubt of their correctness.” The bequest in the j>resent case is in express terms to the wife for life, with an absolute power of disposition, which confines the interest which the wife took in the slaves, to a life estate, and leaves them still a part of her husband’s estate, as she died without exercising her power.
 

 By his codicil, the testator gives expressly to each of his two daughters, after the death of his wife, a support for life. This is a charge upon his estate, and must be raised, in the first place, out of the slaves left undisposed of by the will. It is suggested in the answers of the daughters, that
 
 those
 
 slaves will be sufficient for the purpose, and they claim that those slaves shall be divided between them, and that, as they are married women, the share of each be secured to her sole and separate use. Erom the nature of the charge, it must be for the sole and separate use of the daughters; but before the Court can make a final decree in relation thereto, there must be a reference to the clerk, or to some other person, as a commissioner, to ascertain and report the amount necessary to be paid to each of the daughters annually, for her support during life, and the cause will bo retained for further direction.
 

 Per Cueiam, Decree accordingly.